UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/1/18
```

CYNTHIA COLEMAN,

        Plaintiff,

-v-

THE CITY OF NEW YORK, DEPARTMENT OF
EDUCATION, NORMA VELASQUEZ, SONIA
RAMOS, XIOMARA NUNEZ, ELISSA O'BRIEN,
BARBARA HANSON, BILL GREEN, JOANNA B.
(JANE DOE), JOHN DOE 1-10, JANE DOE 1-10,

        Defendants.

17 Civ. 7864 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

  Plaintiff Cynthia Coleman, a New York City public school teacher, brings this action against the City of New York (the "City"), the New York City Department of Education ("DOE"), several individuals affiliated with the school at which she works (namely, Norma Velasquez, Sonia Ramos, Xiomara Nunez, Elissa O'Brien, Barbara Hanson, Bill Green, and Johanna Bellissimo), and a collection of unnamed John and Jane Does. Coleman alleges discrimination, retaliation, and a hostile work environment by the City and DOE on the basis of race and gender in violation of 42 U.S.C. §§ 2000e *et. seq.* ("Title VII"), and discrimination on the basis of race and gender by the individual defendants in violation of 42 U.S.C. §§ 1981 and 1983.

  Defendants previously moved to dismiss all claims in the original complaint under Federal Rule of Civil Procedure 12(b)(6). The Court granted that motion in its entirety in a bench decision, but gave Coleman leave to amend her complaint in substantial part. Coleman has now filed a First Amended Complaint ("FAC"). Again, defendants now move to dismiss all

claims. For the reasons that follow, the Court holds that Coleman's FAC has failed to cure the pleading deficiencies in her original complaint. The Court dismisses the FAC in its entirety with prejudice.

I.  **Background**

　A.　Facts[1]

In or about December 2004, Coleman, a black woman, was assigned to Public School P10X as a special education teacher. FAC at 3. Coleman alleges that "[m]ost of" her coworkers at P10X "are Hispanic." *Id.*

At some point during the 2005–06 school year, Coleman accused defendant Xiomara Nunez of copying her graduate school homework. *Id.* at 3–4. Coleman believes Nunez is Hispanic. *Id.* at 3. Coleman reported Nunez to the Assistant Principal, defendant Elissa O'Brien, with the result that Nunez "became hostile towards" Coleman. *Id.* This hostility involved Nunez "sabotag[ing], undermin[ing] and talk[ing] badly about [Coleman] to other staff members," which "resulted in a hostile work environment where staff members would become upset with [Coleman] and would verbally and physically abuse[] [her.]" *Id.* Coleman alleges that "[t]his conduct was never directed at any other Hispanic employees." *Id.*

During the 2011–12 school year, Coleman met with O'Brien and the Principal, defendant Barbara Hanson, to address Nunez's allegedly hostile behavior in connection with Nunez's attempt to assign an extra class to Coleman. *Id.* at 4–5. Coleman told O'Brien that "she was being targeted on the basis of her race," but "the issue was simply ignored." *Id.* at 5. When

---

[1] This account is drawn from the first amended complaint. Dkt. 27 ("FAC"). For the purpose of resolving the motion to dismiss, all factual allegations in the complaint are presumed true. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

2

Coleman told Nunez she intended to speak with O'Brien about the assignment, Nunez reacted in "a hostile manner" and complained to other staff. *Id.* at 4–5.

During the 2012–13 school year, Coleman alleges that she was not properly informed of the summer school roster. *Id.* at 5. Coleman claims that Nunez told her Coleman had already signed the summer school roster, while Coleman "insisted that she had not." *Id.* Coleman believes Nunez's conduct was "a deliberate act to sabotage her summer assignment." *Id.*

During the 2013 summer school term, Coleman was assigned to teach a third/fourth grade class instead of her usual sixth/eighth grade class, to which another teacher had been assigned. *Id.* Coleman claims that her teaching license covers only fifth to ninth grades. *Id.* When Coleman asked defendant Bill Green why she had been assigned to a different class, he allegedly "became very verbally hostile towards her and [] used an unprofessional tone and mannerisms towards" Coleman. *Id.* Because of this hostility, Coleman "had to get her union involved." *Id.* at 6.

Finally, Coleman discusses two incidents during the 2015–16 school year involving defendant Johanna Bellissimo. The first, which occurred at an unspecified date, involved one of Bellissimo's students bothering one of Coleman's students. *Id.* Bellissimo saw Coleman speaking with Bellissimo's student's parent, and mistakenly assumed that Coleman was speaking to the parent about the altercation between the students. *Id.* at 6–7. Bellissimo then allegedly told staff that Coleman was "bashing staff" to the student's parent, with the result that the staff "became hostile" towards Coleman. *Id.* at 7. Coleman alleges that she was informed there was a meeting scheduled with the Principal and the staff to "confront [Coleman] about this issue." *Id.*

The second incident, from around February 2016, arose from Coleman's students using lockers in Bellissimo's classroom. *Id.* at 6. Coleman alleges that her students were unable to

3

store their belongings because Bellissimo's classroom was locked. When Coleman tried to learn when the classroom would be unlocked so that her students might use the lockers, Bellissimo claimed that she did not know what time her class started. *See id.* "The situation escalated and words were exchanged" between Coleman and Bellissimo, such that Coleman had to get "physical" assistance from O'Brien to learn the start time of the class. *Id.*

### B. Procedural History

On September 12, 2016, Coleman filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on her race, color, sex, and national origin; hostile work environment; and retaliation. *See* Dkt. 29-1, Branch Decl. Ex. A (EEOC Charge). On March 7, 2017, the EEOC issued Coleman a Right to Sue Letter. Dkt. 29-2, Branch Decl. Ex. B (Right to Sue Letter).

On August 3, 2017, Coleman filed a complaint in the New York State Supreme Court in the Bronx against the instant defendants and her school, Public School P10X. *See* Dkt. 1-1, Ex. C (Complaint). Coleman alleged discrimination, a hostile work environment, and retaliation by all defendants on account of her race and gender under Title VII and the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"). She also alleged negligence by Public School P10X and DOE based on their allowing staff to create a hostile work environment. *Id.* at 7–9. On October 12, 2017, defendants timely removed to this Court. Dkt. 1.

On November 16, 2017, defendants moved to dismiss. Dkt. 8. On February 6, 2018, after two extensions, Coleman responded. Dkt. 17. On February 27, 2018, defendants replied. Dkt. 18. On March 5, 2018, at an initial pretrial conference, this Court issued a bench decision granting the motion to dismiss. Dkt. 20. The Court dismissed with prejudice the Title VII claims against the individual defendants, all claims against Public School P10X, and all state law

4

claims.² It dismissed all other claims without prejudice and with leave for Coleman to amend. *See id.*

On April 11, 2018, Coleman amended her complaint. Dkt. 27. Defendants again moved to dismiss. Dkt. 28. On May 30, 2018, Coleman filed her opposition. Dkt. 36. On June 18, 2018, the Court agreed to accept defendants' earlier (February 27, 2018) reply as their reply with respect to the amended complaint, based on defendants' assessment that plaintiffs' opposition submission to the motion to dismiss the amended complaint tracked, nearly verbatim, plaintiffs' initial opposition. Dkt. 40.

## II. Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. For the purpose of resolving a

---

² The Court dismissed Coleman's state law claims with prejudice because Coleman had failed to file a Notice of Claim within 90 days after the claim arose, as required by New York's Education Law. *See* Dkt. 29-3, Branch Decl. Ex. C ("IPTC Tr.") at 14–15. Coleman commenced a special proceeding on April 17, 2018, in the Bronx Supreme Court seeking leave to file a late Notice of Claim. *See* Dkt. 41. On June 21, 2018, the Supreme Court denied this application. Dkt. 41-2 (Supreme Court decision).

The Court dismissed Coleman's Title VII claims against the individual defendants because "Title VII does not impose liability on individuals," IPTC Tr. at 10 (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012)), and against Public School P10X because "under New York law, public schools themselves are not subject to suit," *id.* at 11 (citing N.Y. Educ. L. § 2590-g(2); *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 159 (2d Cir. 2008)).

motion to dismiss, the Court must assume all well-pleaded facts to be true, drawing all reasonable inferences in favor of the plaintiff. *See Koch*, 699 F.3d at 145. That tenet, however, "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### III. Discussion

#### A. Title VII Claims

##### 1. Statute of Limitations

As the Court discussed in its prior bench opinion, Title VII claims accruing more than 300 days before the date of an EEOC filing are time-barred. *See* 42 U.S.C. § 2000e-5(e)(1); IPTC Tr. at 6. Because Coleman filed her EEOC charge on September 12, 2016 claims based on events occurring before November 17, 2015, are time-barred. All of Coleman's claims aside from the two incidents with Bellissimo occurred during the time-barred period.

Coleman argues here, as she did in opposition to the first motion to dismiss, that her time-barred claims are nonetheless viable for two reasons: that the 300-day period is tolled when an employer fails to comply with Title VII's posting requirements, and because of the continuous violation doctrine.

Coleman first argues that the 300-day period is tolled when an employer fails to comply with Title VII's posting requirements. *See* Dkt. 36 ("Pl. Mem."); *see also Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino*, 410 F.3d 41, 48 (1st Cir. 2005) ("[W]here appellants have asserted that no informational notices were posted and that they had no knowledge of their legal rights until informed by their attorney, they have met the threshold requirements for avoiding dismissal of their Title VII suit."); *EEOC v. Kentucky State Police Dep't*, 80 F.3d 1086,

6

1096 (6th Cir. 1996) (same); *Callowhill v. Allen-Sherman-Hoff Co.*, 832 F.2d 269, 272 (3d Cir. 1987) (same); *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987) (same). Coleman's initial complaint failed to so plead. The Court, in dismissing that complaint, noted the absence of any allegation that her employer failed to post notices. *See* IPTC Tr. at 7.

The FAC is again devoid of any factual allegation that Coleman's employer failed to post notices. This lapse is particularly notable in that the Court, in dismissing her original complaint, had specifically directed Coleman to plead these facts, if true, in her amended complaint. *See id.* ("[T]he Court will allow Coleman to amend her complaint to plead . . . that the Department of Education failed to post the notices required by Title VII."). After defendants fairly noted this fatal shortcoming in her FAC, Coleman attached a declaration to her brief in opposition seeking permission to add this claim to her FAC; the brief in opposition therefore contains the factual representation of a failure to post. *See* Pl. Mem. at 6. Coleman there states: "The failure to include them in the amended complaint is the fault of counsel, but doesn't change the . . . reality that plaintiff has sworn to." *Id.* Defendants counter that, even were the Court to generously honor Coleman's request to belatedly attest to facts indicating her employer's failure to post notices, Coleman's tolling argument should still fail, because she had actual notice of the 300-day period through information posted by the DOE on its website instructing employees how to file complaints with the EEOC. *See* Def. Mem. at 8–9.

While this Court is reluctant to countenance Coleman's disregard of its admonition to plead (if truthful) the fact of non-posting in her FAC, the Court's strong preference is to resolve matters on the merits, and the Court is mindful of the possibility that the pleading lapse is the fault of counsel, not Coleman. The Court accordingly treats Coleman's allegations here in her declaration regarding failure to post as if they had been included in her FAC. Consistent with the

7

circuit authority above, the Court allows the 300-day period to be equitably tolled on account of the employer's alleged failure to post notices and, construing the facts alleged by Coleman as true, accepts as adequately pleaded that Coleman lacked actual knowledge of this filing deadline. Accordingly, the Court addresses Coleman's allegations on the merits.[3]

### 2. Discrimination Under Title VII

An individual's claim of employment discrimination under Title VII is analyzed using the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012). To establish a *prima facie* case of race or gender discrimination at the motion to dismiss stage, a plaintiff must show: "(1) that she is a member of a protected class; (2) that she was qualified for employment in the position; (3) that she suffered an adverse employment action; and . . . has (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015) (summarizing the requirements of *McDonnell Douglas* with subsequent Supreme Court precedent). "The facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Id.* at 311.

The first two elements of the *McDonnell Douglas* framework are undisputedly well-pleaded here. As a black woman, Coleman is a member of two protected classes. And defendants do not appear to dispute that she was qualified for her position. Defendants move to dismiss on the third and fourth elements. They argue that Coleman has alleged neither an

---

[3] In light of this ruling, the Court has no occasion to reach Coleman's alternative argument as to why her claims are timely—that the continuous violation doctrine tolls the 300-day period.

8

adverse employment action nor facts tending to demonstrate race or gender discrimination. As to the former, Coleman alleges that she adequately pleaded an adverse employment action because she was demoted to teaching third and fourth grade classes. Pl. Mem. at 7. As to the latter, she argues that she has raised a minimal inference of discriminatory motivation by alleging Nunez's "aggressive behavior" combined with her allegation that Nunez's "conduct was never directed at any other Hispanic employees." *Id.* at 7–8.

For the reasons that follow, the Court holds that Coleman's FAC fails adequately to plead either an adverse employment action or facts giving rise to a minimal inference of discrimination. These lapses each independently require dismissal of Coleman's Title VII discrimination claim.

    *a.    Adverse Employment Action*

An adverse employment action is a "*materially significant disadvantage* with respect to the terms of the plaintiff's employment." *Littlejohn*, 795 F.3d at 312 n.10 (citations omitted). Examples include "termination, demotion, a less distinguished title, a material loss of benefits, or significantly diminished material responsibilities." *Id.* (internal quotation marks omitted). Such an action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)); *see also Valenti v. Massapequa Union Free Sch. Dist.*, No. 09 Civ. 977 (JFB) (ARL), 2012 WL 1038811, at *14 (E.D.N.Y. Mar. 28, 2012) ("Not receiving a requested or desired assignment is not an adverse employment action.").

Here, Coleman claims that she did not receive her desired teaching assignment for a single summer. This does not rise to the level of a demotion. Coleman does not allege any change in title, benefits, or pay as a result of this assignment. Coleman has therefore failed to

9

plead the third element of the *McDonnell Douglas* framework. Her Title VII discrimination claim must be dismissed.

### b. Discriminatory Motivation

Even if the complaint had adequately pleaded an adverse employment action, dismissal would be required for an independent reason: Coleman has failed to allege facts giving rise to a minimal inference that her termination occurred *because of* her race or gender.

An inference of discriminatory motivation may arise from circumstances including, but not limited to, "an employer's [1] criticism of the plaintiff's performance in ethnically degrading terms; [2] invidious comments about others in the employee's protected group; or [3] the more favorable treatment of employees not in the protected group; or [4] . . . replac[ement of] a terminated or demoted employee with an individual outside the employee's protected class." *Littlejohn*, 795 F.3d at 312–13. Courts therefore refuse to find an inference of discrimination absent some causal connection between the discrimination and the protected characteristic—namely, that the plaintiff was discriminated against *"because of"* the protected characteristic. *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (citations omitted); *see also, e.g., Williams v. Time Warner, Inc.*, 440 Fed. App'x 7, 9–10 (2d Cir. 2011); *Nguedi v. Fed. Reserve Bank of N.Y.*, No. 16 Civ. 636 (GHW), 2017 WL 2557263, at *5 (S.D.N.Y. June 12, 2017); *Moore v. Verizon*, No. 13 Civ. 6467 (RJS), 2016 WL 825001, at *7 (S.D.N.Y. Feb. 5, 2016); *Thelwell v. City of New York*, No. 13 Civ. 1260 (JGK), 2015 WL 4545881, at *10–11 (S.D.N.Y. July 28, 2015).

Here, Coleman's FAC does not plead any facts indicating a causal connection between her protected classifications and the alleged discriminatory actions. On the contrary, Coleman describes how Nunez's hostility towards her stemmed from an independent source: Coleman's allegation that Nunez had been copying her graduate school homework. Coleman does not

10

describe incidents of ethnically degrading language or invidious comments about African Americans. Where "most of" Coleman's coworkers were Hispanic, Coleman has not pleaded anything about Nunez's conduct towards other non-Hispanic workers besides herself, stating only that Nunez showed a lack of hostility towards "other Hispanic employees." Accordingly, Coleman has failed to plead any causal connection to her protected characteristics. Her Title VII discrimination claim must be dismissed independently for failure to plead the fourth element of the *McDonnell Douglas* framework.

### 3. Hostile Work Environment Under Title VII

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 604 (2d Cir. 2006) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)). To state a claim for a hostile work environment under Title VfII, therefore, a complaint must plausibly allege that a plaintiff's workplace was permeated with hostile conditions "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive." *Harris*, 510 U.S. at 21. A plaintiff must also plead that she "subjectively perceived the environment to be abusive." *Id.*

As this Court held in its bench decision:

> Although Coleman's complaint alleges that she subjectively perceived the environment at P.S. P10x to be abusive, it does not come anywhere close to pleading facts sufficient to show conditions that a reasonable person would find hostile or abusive. Instead, the complaint alleges isolated incidents of conflict between Coleman and her colleagues. But "isolated instances of harassment ordinarily to do not rise to" the level of an actionable hostile work environment. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560[,] 570 (2d Cir. 2000). "Rather, the plaintiff must demonstrat[e] [either that] a single incident was extraordinarily severe or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment." *Id.*

11

IPTC Tr. at 12.

Notwithstanding being privy to this analysis, Coleman has not alleged in her FAC any further instances of hostile behavior. Indeed, the factual recitation of her FAC is almost exactly the same as that of her initial complaint, save the addition of a few conclusory sentences alleging racial animus. *See* FAC at 3–5 (adding only that Coleman is "a Black Female teacher [and] [m]ost of her coworkers are Hispanic," *id.* at 3 ¶ 1, that Coleman "endured a series of racially discriminatory acts as well as a constant barrage of racial hostilities," *id.* ¶ 2, that "Ms. Nunez is an Hispanic woman," *id.* ¶ 3, that Ms. Nunez's "conduct was never directed at any other Hispanic employees, and was only directed t[o] plaintiff," *id.* at 4 ¶ 4, and that Coleman "was being targeted on the basis of her race," *id.* at 5 ¶ 5).

The FAC, therefore, still "does not allege either an extraordinarily severe incident or a series of incidents that are alleged to be continuous or concerted." IPTC Tr. at 12. The added conclusory statements alleging racial animus do not disturb the Court's assessment that the FAC fails to allege "that any of the alleged incidents of hostility arose because of Coleman's status as a woman or as an African-American." *See id.* In none of her isolated altercations with various colleagues does Coleman plead facts even contextually suggesting animus towards her based on her race or gender. Coleman's hostile work environment claims must therefore be dismissed.

### 4. Retaliation Under Title VII

As the Second Circuit has held: "In order to establish a prima facie case of retaliation, [a plaintiff] must show that: (1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Schiano*, 445

12

F.3d at 608 (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)); *see also* IPTC Tr. at 12–13.

Defendants argue that Coleman has failed to plead elements three and four, because she "(1) does not allege that she suffered retaliation on the basis of her protected classes after filing her EEOC charge;" (2) does not allege any other protected activity; and (3) does not allege a causal connection between any protected activity and any alleged retaliatory action. *See* Def. Mem. at 16. Opposing dismissal, Coleman counters that her protected activity was not the EEOC charge, but her earlier complaint to O'Brien and Hanson during the 2011–12 school year about Nunez assigning her an extra class. She states there that the retaliatory action on which her claim is based was "plac[ing] her in rotation and remov[ing] her from classes she previously taught." *See* Pl. Mem. at 9. But that characterization is inconsistent with the facts pleaded in her FAC. Coleman does not contend in the FAC that O'Brien and Hanson retaliated against her; rather, the FAC complains, "the issue [of Nunez's hostility] was simply ignored." FAC at 5. Further at odds with her present characterization, the FAC alleges that the decision to assign her to a third/fourth grade class rather than her usual sixth/eighth grade class for the 2013 summer term was taken by Green. The FAC does not plead facts connecting Green to either Nunez or O'Brien and Hanson. *See id.*

The FAC does allege that Nunez was angry that Coleman planned to speak to O'Brien "about the assignment," and claims that Nunez complained to other staff about it. *Id.* at 4. Conceivably too, although the FAC does not say this explicitly, when Nunez told Coleman that Coleman had signed the summer roster when Coleman "insisted she had not," *id.* at 5, this act was long-delayed payback for Coleman's having, allegedly, complained to O'Brien about being targeted on the basis of her race. But the FAC does not plead any facts to the effect that this

13

complaint (which the FAC says O'Brien ignored) was the source of Nunez's wrath. Rather, the FAC alleges that Nunez was angry because Coleman disputed Nunez's assignment of a class to her, as reflected in the fact that Nunez then "went to the staff and told them that [Coleman] said she was in charge and that [Coleman] was not taking on an extra class and that the teacher of that class needs to do his or her job." *Id.* at 4–5. Absent facts plausibly tying Nunez's conduct to a complaint about racial discrimination, Nunez's conduct is instead plausibly read as arising from a quotidian (non-race-related) complaint about work allocation and workplace fairness.

Coleman therefore has again failed to allege a causal connection between any protected activity and any adverse action. Her retaliation claim, too, must be dismissed.

### B. Section 1981 and 1983 Claims

#### 1. Statute of Limitations

As this Court noted in its bench decision:

> The statute of limitations for a section 1983 claim arising in New York is three years. *See Cloverleaf Realty v. Town of Wawayanda*, 572 F.3d 93[, 94] (2d Cir. 2009). The statute of limitations for a section 1981 claim is four years. [*See*] *Lawson v. Rochester City School District*, 446 F. App's 327[, 328] (2d Cir. 2011).
>
> Coleman's claims under these provisions, therefore, are limited to those arising from events after August 7th, 2013, for section 1981, and August 7th, 2014, for section 1983. Coleman does not disagree with that.[4]

IPTC Tr. at 10. For purposes of her section 1981 claim, only events involving her 2013 summer term assignment and 2015–16 disputes with Bellissimo are therefore timely. On her section 1983 claim, only her disputes with Bellissimo are timely.

---

[4] Although Coleman now appears to dispute the application of the statute of limitations, she makes no argument to support this claim. *See* Pl. Mem. at 13 ("It is clear that plaintiff has pled facts that support her claims of race discrimination and though plaintiff disagrees she is limited to dates before [A]ugust 7, 2013, she has alleged facts to support her claims before that period.").

14

### 2. Discrimination

Coleman alleges that the individual defendants "subjected [her] to a discriminatory hostile work environment on account of her race, being black and her gender" in violation of Sections 1981 and 1983. FAC at 8. Coleman may bring such claims under the Equal Protection Clause of the Fourteenth Amendment. As to gender, however, Coleman has not alleged facts anywhere in the FAC even facially alleging such discrimination. As to race, to establish a *prima facie* case of racial discrimination under Sections 1981 and 1983, a plaintiff must meet the standard articulated under the *McDonnell Douglas* framework. *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491–92 (2d. Cir. 2010) (claims "for race . . . discrimination under Sections 1981 and 1983 are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green* . . . ."). Coleman's abridged factual allegations fail the *McDonnell Douglas* test for the reasons articulated *supra* in this Court's discussion of Coleman's Title VII discrimination claim.[5] Her 1981 and 1983 claims must also, therefore, be dismissed.

### CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss the First Amended Complaint with prejudice. The Clerk of Court is directed to terminate the motion pending at Dkt. 28 and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: November 1, 2018
New York, New York

---

[5] The Court separately notes that the only allegations Coleman quotes in support of this claim are those regarding Nunez, which are time-barred. *See* Pl. Mem. at 10–13.

15